————o————

SAMUEL CUPPLES, Defendant in Error, vs. ANDREW WHELAN, et al., Plaintiffs in Error.

1. *Agency—Unauthorized sale by clerk—Ratification of prior acts.*—Where a merchant's clerk makes sales, receives payment and gives receipts in the name of his employer, with the sanction of the latter, or the merchant in any manner holds him out to the community as his agent for those purposes, he cannot recover damages for the value of goods sold without his authority afterwards, in the same course of trade. But to apply this rule to a case where a purchasing clerk having been employed in a single instance to make a sale, fifteen months afterward made another wholly unauthorized one, was held to carry the doctrine to an unwarranted extent, especially where the price asked, and other circumstances of the sale were such as should have aroused the suspicions of ordinarily prudent persons.

Cupples v. Whelan, et al.

*Error to St. Louis Circuit Court.*

*Bell & Thompson,* for Plaintiffs in Error, cited in argument Debaun vs. Atchison, 14 Mo., 543; Smith's Merc. Law, 170; 1 Pars. Contr., 39–40 & 440; Rice vs. Groffman, 56 Mo., 434; Hazard vs. Treadwell, 1 Str., 506; Todd vs. Robinson, 1 Ryan & M., 217; Gilman vs. Robinson, Id. 226; Dyer vs. Pearson, 3 B. & C., 38; Cruzan vs. Smith, 41 Ind., 288.

*Krum & Madill,* for Defendant in Error.

WAGNER, Judge, delivered the opinion of the court.

This was an action brought for the recovery of the value of certain personal property, consisting of 11,800 seamless bags, alleged to have belonged to the plaintiff, and to have been converted by the defendants. The evidence substantially showed that the plaintiff was a merchant doing business in wooden ware and willow goods, and that during the years 1870 and 1871, he had in his employment one Damon, who was a clerk and purchasing agent, and that between July 1st, and December 31st, 1871, Damon at various times bought twenty-eight different lots of seamless bags from different firms, amounting in all to 11,800, and had them charged to plaintiff whose cashier paid for them; that Damon never took the bags to plaintiff's store, but procured private conveyances and took them to the defendants. Damon bought the sacks for 32 and 32 1–2 cents and sold them to defendants at 20 cents for the first lot, 18 cents for some of the subsequent ones, but the most of them he disposed of for 15 cents. The defendants paid him the money, and he appropriated it to his own use.

For the plaintiff, the court instructed the jury that a larceny or embezzlement of property did not pass the title to it to the thief, or those claiming through him; and that no one could transfer to another a greater interest in the property then he possessed.

The jury were further instructed that if from the evidence it appeared that Damon wrongfully and fraudulently took

and carried away the bagging from the stores of Bemis, Chase & Drew with the intent to convert the same to his own use, and make it his property without the consent of the owner thereof, then such taking and carrying away constituted a larceny of the bagging, and if Damon afterwards sold the bagging to defendants without the knowledge or consent of plaintiff, the owner thereof, and defendants afterwards sold the same and converted the proceeds to their own use, they acquired no title to the bagging through their purchase, and they were liable for the market value of the bagging at the time of the conversion.

Defendants asked four instructions which were all refused. The first told the jury, that if they believed from the evidence that Damon was in the plaintiff's employ, as his clerk, and as such was authorized by him to sell for him and in his name the sacks, and receive and receipt for the proceeds, then plaintiff could not recover. The second declared, that if Damon was in plaintiff's employ as his clerk, and in selling to the defendants the sacks, he was acting in the usual course of his employment as such clerk, what he did in selling and receipting for the sacks in plaintiff's name, was binding upon the plaintiff, and he could not recover. The third instruction asserted the proposition that if plaintiff in the year 1870 and 1871 held out and accredited to the world Damon as his agent, and by so holding him out defendants were led to deal with him, believing him to be the authorized agent of plaintiff; and Damon, under cover of such holding out, sold the sacks mentioned to defendants in plaintiff's name, and received payment for them, and receipted for such payment, then plaintiff was not entitled to recover, if defendant acted in good faith, and was guiltless of any part in the fraud practiced by Damon on his employer.

The fourth instruction was to the effect, that if Damon was in the employ of plaintiff in 1870 and 1871, as a clerk, and as such clerk he, prior to the sale of the sacks in controversy, sold for plaintiff to the defendants a lot of sacks, and collected the money on the sale and receipted for the bill; and plain-

tiff never informed the defendants that Damon had no authority to sell his goods and collect the proceeds, and the sacks were bought by defendants of Damon who claimed to act for plaintiff, under circumstances which were calculated to lead defendants to believe that he was acting for plaintiff in such sales, then the plaintiff could not recover.

There was a verdict and judgment for the plaintiff.

There is no question in regard to the correctness of the ruling in refusing the first two instructions, as there was no evidence to warrant them. The testimony shows most clearly that Damon had no authority to sell the sacks or anything else for the plaintiff, and that he was not acting in the usual course of his employment. His duties were entirely those of a purchasing clerk, and he had no authority, nor was it usual for him to go outside and sell articles or commodities.

In the case of Rice vs. Groffman (56 Mo., 434), it was held that where a party has so acted, that another is led to believe in the right of a third person to act as his agent, if any loss occurs by reason of any act of the supposed agent, the loss must fall on him whose conduct caused the mistake.

By permitting another to hold himself out to the world as his agent, the principal adopts his acts and will be held bound to the person who gives credit thereafter to the other, in the capacity of his agent. Thus, where a person sent his servant to a shop keeper for goods upon credit, and paid for them afterwards, and sent the same servant again to the same place for goods, and with money to pay for them, and the servant received the goods, but embezzled the cash, the master was held answerable for the goods, for he had given credit to his servant by adopting his former act. So, where a broker had usually signed policies of insurance for another person, or an agent was in the habit of drawing bills on another, the authority was implied from the fact that the principal had assumed and ratified the acts; and he was held bound by a repetition of such acts, where there was no proof of notice of any revocation of the power, or of collusion between a third party and the agent. It is the prior conduct of the principal

that affords just ground to infer a continuance of the agency in the particular business. (2 Kent. Com., 615; Whart Ag., § 40.)

Now, the third and fourth instructions are intended to assert essentially the same principle, but they cannot be sustained in this case, although undoubtedly good as abstract propositions of law. They are speciously designed to apply to transactions which have no necessary or legitimate connection. They both connect the years 1870 and 1871, and unless a single dealing that took place in the early part of the former year, can be made to connect with the fraudulent acts of the latter year, there can be no pretense that the defendants have any valid defense.

It appears from the evidence that in April, 1870, the plaintiff purchased a lot of sacks, some of which did not suit him, and he authorized Damon to go out in the market and sell them for him. Damon sold them to the defendants and receipted the bill, and defendants gave to plaintiff their check for the money. This is the only instance in which Damon was employed to conduct or carry on a sale. There was no continuation of the employment, nor was there anything further to show that he was empowered to act in that line. In July, 1871, some fifteen months after the forgoing transaction, he commenced buying the bags now in controversy on plaintiff's credit, and selling them to the defendants. For the first lot he receipted in plaintiff's name, but that pretense was soon dropped, and he gave the receipts thereafter in his own name, and received the money and appropriated it to his own use. Defendants drew no more checks to plaintiff, as they did in the preceding year, when the transaction was a fair and honest one, but they paid the cash down to Damon when he delivered the goods. The sacks were all new, and they were mostly sold at half their value.

The frequency of the sales, and the inadequacy of the price at which the sacks were offered, were sufficient to have aroused suspicion in any ordinarily prudent man, especially where there had been no continuous previous dealings. To say,

that, because Damon in one single instance was authorized to make a sale, by his principal, fifteen months anterior to the transactions here complained of, therefore, the defendants had a right to presume that he was acting within the scope of his employment, or that the plaintiff held him out as having authority, would certainly be carrying the doctrine to an unwarrantable extent. The instruction of the plaintiff, whilst perhaps liable to some verbal criticism, was in the main correct.

The judgment should be affirmed. All the other judges concur, except Judge Vories, who is absent.