J. A. FANNING, Appellant, v. W. H. COBB, Respondent.

St. Louis Court of Appeals, February 9, 1886.

1. AGENCY—INSTRUCTIONS.—In an action to charge a principal on a contract made by an agent, for the doing of work on the principal's land, it is not error to refuse an instruction that the principal has made himself liable by permitting the work to be done without objection, where there is evidence that the principal had sold the land to the agent, pending the work, and where there is nothing to show whether the principal's knowledge that the work he was doing was before or after the sale.

2. ———— NOTICE.—The negotiation of a contract having been begun by A in the presence, and as the agent of B, who subsequently withdraws from the scene without notifying C, the other party to the negotiation, of his revocation of A's authority, a consummation of the contract, and its performance by C, will render B liable thereunder.

APPEAL from the St. Louis Circuit Court, SHEPARD BARCLAY, Judge.

*Reversed and remanded.*

I. C. TERRY, for the appellant: "The plaintiff's instructions, numbers eleven and twelve, were proper," and contained sound legal propositions. Story, Agen., sects. 36, 80; *Rice v. Groffmann*, 56 Mo. 434; *Cupples v. Whelan*, 61 Mo. 583; *De Baun v. Atchison*, 14 Mo. 543. "The defendant's instruction number five was under the evidence misleading and restrictive, and prevented the jury from considering all or any of the acts of the defendant which induced or led the plaintiff into making the contract with Warner as the agent of defendant." *Sigerson v. Pomeroy*, 13 Mo. 620; *Clark v. Hammerle*, 27 Mo. 55; *Mead v. Brotherton*, 30 Mo. 201; *Sawyer v. Railroad*, 37 Mo. 240; *Turner v. Loler*, 34 Mo. 461; *Raysdon v. Trumbo*, 52 Mo. 35; *Iron Mt. Bank v. Murdock*, 62 Mo. 70. Instruction number five given for the

defendant, was inconsistent with, and contradictory to, instruction number two given for the plaintiff. *The State v. Nensot*, 2 Mo. App. 472 ; *Goetz v. Railroad*, 50 Mo. 472 ; *Singer Co. v. Hudson*, 4 Mo. App. 145.

A. M. SULLIVAN, for the respondent : The court did not err in refusing the plaintiff's instructions numbers eleven and twelve. *Raysdon v. Trumbo*, 52 Mo. 35 ; *Budd v. Hoffheimer*, 52 Mo. 297 ; *Sawyer v. Railroad*, 37 Mo. 240. Because the question of agency or authority is itself a question of fact, not of law. *Middleton v. Railroad*, 62 Mo. 579 ; *Robinson v. Walton*, 58 Mo. 380.

THOMPSON, J., delivered the opinion of the court.

This was an action to recover compensation for filling a vacant lot in the city of St. Louis, and to enforce a mechanic's lien against the same. The answer was a general denial.

On the trial of the cause, the following evidence was adduced, tending to sustain the allegations in the plaintiff's petition : That the plaintiff did the work, as alleged in the petition, under an agreement made with one E. S. Warner, a real estate agent doing business in the city of St. Louis, in whose office the defendant had desk room, and transacted business. That the plaintiff made the contract for the filling with E. S. Warner, who represented himself to the plaintiff as the agent of the defendant Cobb. That the defendant Cobb, prior to the date when the work was undertaken, had caused the lot to be cross-sectioned by a civil engineer, with a view to having it filled. That the defendant Cobb, through E. S. Warner, had taken bids from different persons in reference to the filling of said lot, and that their bids were had but a short time previous to the time when the work was let to the plaintiff. That before the plaintiff entered upon the work, he and the defendant Cobb, and said Warner, went to Warner's office, and conferred together in reference to filling the lot, said Warner acting and representing himself as the agent of the defendant.

That shortly after said conference, Warner notified the plaintiff that he could go on with the work, and on such notification the plaintiff did proceed to fill said lot as alleged. That Warner represented to other persons that Cobb was having the lot filled. That while the plaintiff was at work filling said lot, the defendant Cobb saw the plaintiff at said work upon his lot, filling the same, but the defendant did not, when he saw the plaintiff at said work, or at any time, direct the plaintiff to discontinue the work. That the amount alleged to be due in the petition, had, since the filing of the lien upon the lot, been reduced one hundred and fifty dollars, leaving a balance of five hundred dollars. That a mechanic's lien was filed upon the lot referred to in the petition, in due form and within four months after the work was finished; no objection being made to the lien at trial, as to form or time of filing. That the defendant was in possession and ownership of the lot when the work was contracted to be done, and remained so until the work was finished, and at the date of filing this suit was in possession and ownership of the same.

The plaintiff offered testimony tending to support the facts alleged in his petition.

On the part of the defendant, evidence tending to prove the facts set up as a defence in his answer, and to contradict the plaintiff's evidence, was offered, and, among others, offered the following facts, to-wit:

That the defendant Cobb never authorized E. S. Warner to contract with the plaintiff for filling the lot described in the petition. That while the said lot was being filled the defendant Cobb sold the same to said Warner, but never gave said Warner any writing to that effect, nor did he give said Warner possession, or receive from him any money on account of said sale. That Warner informed the plaintiff that he, Warner, had purchased said lot. Warner (the person mentioned in instruction number three), testified as a witness, and as such stated that he never was agent for the defendant in the matters in question, or any of them.

On this state of facts the plaintiff offered the following instruction, which was given:

"2. If the jury believe from the evidence that defendant Cobb, by one E. S. Warner, as his agent, entered into a contract with plaintiff by which he agreed to pay the plaintiff the sum of eight hundred dollars as a consideration for filling his lot on Lindell avenue, described in the petition, and if they further believe from the evidence that plaintiff did, in pursuance of said contract, fill said lot as agreed, and that he has not yet been paid for said filling, they will find a verdict for plaintiff for such sum as may be still due on account thereof, with interest from date of instituting this suit, viz.: the seventeenth day of September, 1884, at the rate of six per cent. per annum."

The plaintiff also offered the following instructions, which the court refused:

"11. If the jury believe from the evidence that defendant Cobb permitted the plaintiff to work upon and fill the lot owned by him on Lindell avenue, under an agreement with, or at the request of one E. S. Warner, who was pretending to act for defendant, as his agent, in making said agreement or request, and did stand by and allow plaintiff to do said filling, and silently acquiesce therein, and not stop plaintiff from proceeding with such work, they may presume that said Warner, so pretending to act as the agent of Cobb, was his agent, and if they find that said agent contracted with plaintiff for the filling of said lot for the sum of eight hundred dollars, and that plaintiff did fill said lot according to said contract, they will find for plaintiff for such sum as may still be due on account of said contract, with interest at the rate of six per cent. thereon, from the date of filing this suit, even though said Warner had no express authority from defendant to make such a contract with the plaintiff."

"12. If the jury believe from the evidence that during the negotiations for the filling of defendant's lot, the defendant Cobb held out to plaintiff that E. S.

Warner was his agent, or if said Warner pretended to act as the defendant's agent during said negotiations, and the defendant stood by knowingly, and suffered said negotiations to go on, and did not inform the plaintiff before said negotiations were completed, and before said contract was entered into, that he, the defendant, had sold said lot to said Warner, and had ceased to have any interest in said contract, they are instructed that under such a state of facts, the contract so entered into was a contract between the plaintiff and the defendant, and that the defendant will be bound by it, and if the plaintiff, in pursuance of said contract, went to work and completed the filling of the lot, described in the petition, according to the terms of the contract so entered into, they will find for the plaintiff."

The defendant offered the following instructions, which were given:

"7. The court instructs the jury that they can not take into consideration the acts and statements of Warner, not assented to by the defendant, in respect to the filling of the lot, as against the defendant, or affecting him, unless it is established to the satisfaction of the jury, from evidence, other than that of Warner himself, that Warner was in fact acting as the defendant's agent in the matter."

"4. The court instructs the jury that E. S. Warner had the right to contract on his own behalf with Fanning, for the filling of the lot in question, and if the jury believes, from his evidence, that in the agreement with Fanning, Warner was acting for himself, and not for the defendant, and that the understanding between them was that Fanning was to look to Warner for payment, then the jury are instructed that they must find for the defendant."

"5. The court instructs the jury that before the plaintiff can recover in this case, the burden of proof is upon him to establish to your satisfaction, either that the defendant authorized Warner to make the agreement, or that, after it was made, he ratified or adopted it."

The first assignment of error is that the court erred in refusing to give the instructions above set out, numbered eleven and twelve. The former of these instructions, which embodies the principle that the defendant had estopped himself to deny the authority of Warner to make the contract for him as his agent, by standing by and seeing the plaintiff do the work, although sound as an abstract principle of law, is not relevant to the evidence, as preserved in the bill of exceptions ; because the evidence does not show that the defendant thus stood by and saw the plaintiff doing the work, and acquiesced in the doing of it before the defendant had sold the land to Warner. If this standing by took place after the defendant had sold the land to Warner, of course he could not make himself liable by failing to object to the filling of Warner's land, unless he knew at the time that the work was being done under a contract which Warner had assumed to make for him, which does not appear.

But we think that the second of these instructions embodies a correct proposition of law, was applicable to the evidence, and should have been given. The record recites : "That before plaintiff entered upon the work, he and the defendant Cobb, and said Warner, went to Warner's office, and conferred together in reference to filling the said lot, said Warner acting and representing himself as the agent of the defendant. That shortly after said conference, Warner notified the plaintiff that he could go on with the work, and on such notification plaintiff did proceed to fill said lot as alleged."

Certainly any man would infer from this evidence that Warner was negotiating for the doing of the work as the defendant's agent, with the defendant's approbation ; and if, after allowing the plaintiff to acquire this impression from Warner's representations thus made in the defendant's presence, the defendant sold the land to Warner, or for any other reason withdrew his authority from Warner to make the contract, the defendant was bound, as a matter of fairness between man and

man, to notify the plaintiff of that fact. If I enter upon a negotiation for a contract, holding out A B as my agent in the premises, and, before the contract is agreed upon, I personally retire from the scene, and thereafter the other party complete the contract with A B, it does not lie in my mouth to say that A B had not authority, or that I withdrew my authority before the contract was entered into, unless I took pains to apprise the other party of the fact. Even in a more general sense, one who holds out another to the public as his agent, possessing certain authority, or knowingly suffers the agent to act for him upon the assumption of possessing such authority, is bound to notify the public of a revocation of that authority, in order to avoid liability for the agent's acts. *Cupples v. Whelan*, 61 Mo. 583, 586.

II. The other point made by the appellant which we shall notice is, that the instruction above set out, numbered five, given at the request of the defendant, was, in its application to the evidence, too restrictive. We also think this point well taken. The general rule undoubtedly is that the liability of a principal for the contracts of his agent is predicated either upon a previous authorization, or a subsequent ratification. But there are cases where a person will become liable for the assumed act of another as his agent on the principle of estoppel, by suffering that other to represent himself as his agent with power to make the particular contract. *DeBaun v. Atchison*, 14 Mo. 543; *Rice v. Groffmann*, 56 Mo. 434; *Cupples v. Whelan*, 61 Mo. 583.

In view of the evidence just recited, it was a fair question for the jury whether that was not the case here.

The judgment will be reversed and the cause remanded. It is so ordered. Rombauer, J., concurs; Lewis, P. J., is absent.