CAUCYRUS SUDDARTH, Respondent, v. EMPIRE LIME COMPANY, Appellant.

St. Louis Court of Appeals, April 4, 1899.

1. **Jurisdiction**: PRACTICE, TRIAL: MOTION FOR NEW TRIAL. The trial court had jurisdiction, in the case at bar, to set aside the judgment because of irregularity independent of the motion for new trial.

2. **Practice, Trial**: VERDICT. If the jury were not able to agree on one of the counts, their verdict as to the other two counts on which they did agree was not nugatory.

3. **Agency**: PROOF OF: SUB-MANAGER. In the case at bar, the defendant received the product of plaintiff's labors and the result of the consumption of plaintiff's wood. Held, that in equity and good conscience he should render compensation therefor under all the circumstances in this case.

*Appeal from the Lincoln Circuit Court.* —Hon.
ELLIOTT M. HUGHES, Judge.

AFFIRMED

WM. A. DUDLEY and MARTIN & WOOLFOLK for respondent.

There was no error in trying the first count separately and it was proper for the judgment on the findings on the second and third counts to await the trial on the first count. R. S. 1889, sec. 2134; Oberbeck v. Mayer, 59 Mo. App. 289; Needless v. Burke, 98 Mo. 474; Mooney v. Kennett, 19 Mo. 551. The entering of the judgment prematurely by the clerk was an irregularity apparent on the face of the record and could be set aside after the term. Showles v. Freeman, 81 Mo. 543, and cases cited therein. If John Lee was the agent of the defendant or the defendant, by its course of dealing with the plaintiff and the world at large, led the plaintiff, in dealing with Lee, to believe that Lee had authority to act for defendant, then, so far as the plaintiff is concerned, Lee was its agent, and defendant would be bound by his contract. 4 Thompson, Corp., secs. 4881-4885; Johnson v. Hurley, 115 Mo. 513-520; Fayles v. Ins. Co., 49 Mo. 380; Stothard v. Aull, 7 Mo. 318; Hoppe v. Saylor, 53 Mo. App. 4-8.

NORTON, AVERY & YOUNG for appellant.

Now this judgment in favor of plaintiff on the second and third counts at the fall term, 1897, was not, as shown by the record, an interlocutory judgment, but in every sense of the word a final judgment. Defendant, objecting to this verdict and judgment, filed his motion for a new trial, which, after argument, was by the court overruled, and matters stood in this shape until the next term of the court, spring

term, 1898. This judgment then was final, and by the provisions of our statute but one final judgment can be rendered in an action. R. S. 1889, sec. 2213; Sater v. Hunt, 75 Mo. App. 468. The plaintiff made no complaint, filed no motion for a rehearing, did not ask to have the judgment set aside, but stood still, let the term come to an end, and the record closed. But the appellee may contend that on his motion the court at the spring term, 1898, vacated and set aside this judgment. To this we answer, the court had no power or authority and its action was absolutely void, as the term had ended and gone. Further, the bill of exceptions taken in this case shows no such action of the court, and the motion and the court's ruling thereon can be preserved and shown only by bill of exception. It was no part of the record proper. It may be true that the transcript shows the action of the court, but a mere recital of this fact by the clerk can not make it part of the record. Nichols v. Stephens, 123 Mo. 119. Now the situation is this: The judgment rendered by the court in this cause at the fall term, 1897, was a final one and the further proceedings of the court were a nullity, or else the whole case was open for a trial anew at the spring term, 1898. Bohm Bros. v. Stivers, 75 Mo. App. 291.

BLAND, P. J.—The petition is in three counts, the first of which is as follows:

"Plaintiff states that the defendant is a corporation duly organized under the laws of the state of Missouri, having its principal business office at Hannibal, in Marion county, Missouri, and that at all of the times mentioned in the several counts in this petition hereinafter set forth the defendant was such corporation and was engaged in the business of manufacturing and dealing in lime, having its works in the county of Lincoln, in the state of Missouri.

"For his first cause of action against said defendant plaintiff states that on the —— day of January, A. D. 1895, the defendant was indebted to plaintiff in the sum of four hundred and fifty-six ($456) dollars in this, that in the year 1894, and while the defendant was engaged in the manufacture of lime in the county of Lincoln aforesaid, the plaintiff and one P. J. Blair were engaged as partners, under the firm name and style of Suddarth & Blair, in dealing in cord wood in said county of Lincoln; that at said time said firm and the said defendant entered into an agreement or arrangement whereby said firm agreed to furnish the defendant a large amount of cord wood in said county of Lincoln for which the defendant agreed to pay said firm the sum of one dollar and seventy cents per cord for the amount of wood said firm should furnish; that in pursuance of said arrangement, said firm did furnish to defendant one hundred and eight and three-fourths cords of wood on the —— day of October, 1894, and one hundred and fifty-nine and one-half cords of wood on the —— day of November, 1894, all of which wood the defendant received at its works in Lincoln county, Missouri, and promised to pay for at the price per cord aforesaid, in all the sum of four hundred and fifty-six dollars; that on the first day of January, 1895, said firm demanded payment of said debt but defendant failed and refused to pay the same or any part thereof and the same still remains due and unpaid; that afterwards said firm duly assigned its said claim against defendant to plaintiff for value received and plaintiff is now the owner thereof and entitled to payment. Wherefore plaintiff prays judgment for said sum of four hundred and fifty-six dollars with interest thereon from January 1st, 1895, and for costs of suit."

The second count is for $160.80 worth of wood sold defendant in the year 1895, with a demand of interest from August 20, 1895. The third one is for $7 for merchandise sold and delivered by plaintiff to defendant. The answer

was a general denial of the first count, admitted the indebtedness of $160.80, on the second, but alleged that interest was due on it from August 19, 1897, and not from August 20, 1895, as claimed in the petition; and admitted the indebtedness of $7 claimed in the third count; averred a payment of the amounts admitted to be due to the clerk of the court for plaintiff's benefit, and the giving of notice of the deposit to plaintiff. At the October term, 1897, of the Lincoln circuit court a trial was had to a jury, resulting in a verdict for plaintiff on the second and third counts, and a failure of the jury to agree on the first count. The verdict was accepted and entered of record and a formal judgment entered for plaintiff on the verdict for the amounts found to be due on the second and third counts of the petition. Within four days after the rendition of the verdict a motion for new trial was filed by the defendant. The motion was passed over until the succeeding April term, 1898, when on the third day of that term it was overruled by the court. On the same day the plaintiff moved the court to set aside the judgment entered at the preceding October term, on the grounds that it was irregularly and improperly rendered and was entered of record by the clerk against the express order of the court. This motion was sustained and the judgment was set aside, but the verdict was permitted to stand. Defendant then moved the court to set aside the verdict and to re-submit the whole case to a jury for trial; this the court refused to do, whereupon the parties went to trial on the first count of the petition, which resulted in a verdict for the plaintiff and judgment was rendered on all three of the counts in favor of the plaintiff. After an unavailing motion for new trial defendant duly appealed.

Appellant makes no specific assignment of error, but we gather from the brief and the oral argument of counsel for appellant, that its contentions are, first, that the trial court lost jurisdiction of the cause by the entry of a final judgment

at the October term, 1897, and that all subsequent proceedings were *coram non judice;* second, that it was error to divide the plaintiff's causes of action and submit the first count of the petition to a jury without also submitting the other two, notwithstanding the fact that a trial and verdict had theretofore been had on the second and third counts; and, third, that the court erred in giving instructions numbers 1, 3 and 4 for the plaintiff on the second trial of the first count. As to the first contention it is sufficient to say that the continuance of the motion for a new trial filed at the October term to the following April term, carried with it the judgment and the entire case, and the judgment was by reason of this continuance as much in the breast of the court at the April term as it was at the preceding October term. If the court had jurisdiction to hear the motion for new trial at the April term and to sustain it and set aside both the judgment and verdict, which the appellant asked it to do, it had jurisdiction to set aside the judgment because of irregularity independent of the motion for new trial. We are unable to see any merit in the second contention of appellant. The petition stated three separate and distinct causes of action, separately stated. The law required a separate and distinct finding on each of these causes of action, i. e., a separate verdict on each count. It was competent for the jury to find verdicts on all three counts because they were all submitted to them. For the reason that they were not able to agree on one of the counts, their verdicts as to the other two on which they did agree was not nugatory. After receiving this verdict and discharging the jury, leaving the issues on the first count undetermined, the court could not do otherwise than to set down the issues on the first count for retrial by another jury. The instructions complained of are as follows:

1. "If the jury believe from the evidence that the defendant by its course of dealing at its works at Elmore in

1894, led Suddarth & Blair to believe that John Lee had authority to act for defendant in the matter of buying the wood as claimed in the first count of the petition, then the defendant can not escape liability to plaintiff by reason of any arrangement between John Lee and defendant unless knowledge of such arrangements or of facts from which such arrangement might reasonably have been inferred, was brought to the attention of Suddarth & Blair or one of them before they sold the wood to Lee for defendant's works."

3. "If the plaintiff sold John Lee the wood mentioned in the orders read in evidence on the credit and account of the Empire Lime Company and the said company by its manager, with knowledge of said facts, promised to pay the same when presented by the witness Porter if he did present said order; then such act constituted a ratification of the act of John Lee and the defendant is liable for the payment of the amount of the order or orders presented. The court instructs the jury that the contract read in evidence by the defendant can not be used to affect plaintiff's right to recover in this case, if he is entitled to recover under the other instructions given, unless plaintiff or his partner Blair had knowledge of the terms of said contract before the sale of the wood."

"If the jury believe from the evidence that the plaintiff sold John Lee for the defendant the wood mentioned in the first count of plaintiff's petition and that at the time of said purchase the said John Lee had no authority from said defendants to purchase said wood for them, yet if the jury believe and find from the evidence that said defendant by its agents or managers after said purchase of said wood by said Lee the defendant then knowing that Lee had purchased said wood for defendant received and accepted said wood and used the same for its own benefit, then such receipt, acceptance and use was a ratification of the contract of said Lee and the verdict will be for the plaintiff for the amount due for said wood at the contract price."

The first count in the petition is based on a verbal contract made by Suddarth & Blair with the defendant, whereby they contracted to deliver wood to the defendant at the price of $1.70 per cord, which price the defendant agreed to pay. The contention of appellant is that the issues submitted to the jury by the instructions are not the issues raised by the pleadings. The instructions are somewhat involved, but we think numbers 1 and 3, when properly construed, mean this: That if the defendant by its conduct and course of dealing held John Lee out as its agent, with authority to buy wood, and that Suddarth & Blair with knowledge of such holding out believing Lee to be the agent of defendant sold and delivered the wood as they believed to defendant, then the defendant was bound by the contract. If this is a correct interpretation of these two instructions, there is no error in them, for in such circumstances the defendant would be estopped to deny that Lee was its agent, and would be bound by the contract. Johnson v. Hurley, 115 Mo. 513; Cupples v. Whelan, 61 Mo. 585; Fanning v. Cobb, 20 Mo. App. 577; Mechem on Agency, secs. 83, 84; Story on Agency, sec. 127. The fourth instruction proceeds upon the theory that if Lee had no authority to contract for defendant, yet, if defendant ascertained that he had so contracted and ratified the act, then it was bound by the contract. The instruction announces a correct legal proposition, and is not erroneous if there is evidence in the record to support it. Hoppe v. Saylor, 53 Mo. App. 4; Hesse Printing Co. v. Travelers Pro. Ass'n, 72 Mo. App. 598. And the fact that the authority of Lee to make the contract as the agent of defendant, must be established, if at all, by the law of estoppel, rather than by direct proof, constitutes no departure. Fahy v. Springfield Grocer Co., 57 Mo. App. 73. It matters not how the agency is established, when established the principal is bound by the act of the agent within the scope of his actual or apparent authority; nor is the fourth instruction a departure

from the pleadings.    If the contract was unauthorized when made, its subsequent ratification by the defendant related back to the making of the contract and made it its contract the moment it was entered into.    The evidence in the case furnishes a forcible illustration of the effect of a solvent corporation to conduct its business through an insolvent party, and to thereby escape corporate liability for the expenses of conducting such business.    From the evidence it appears that the defendant owned two plants for manufacturing lime, one near Hannibal, and the other at Elmore, Missouri.    The one at Elmore was erected in 1890, under the supervision of John Lee, and began operation in 1891 or 1892, and that plaintiff sold wood to defendant in 1892, 1893, 1894 and 1895, during all of which time John Lee was in the employ of the defendant at Elmore, made out pay rolls, hired and discharged hands, and bought wood and gave orders for payments therefor on the defendant, all of which were paid by the defendant, except the orders for the wood delivered by plaintiff and his partner Blair in 1894 (the wood in controversy).    H. B. Thompson was the general manager of the defendant, and it is in evidence that the orders given by Lee to plaintiff for wood delivered in 1894, were presented to Thompson in November or December of that year, and that he promised to pay the orders, but requested that they be held until the following January, as he did not want them to appear in the business account for 1894; they were so held, but when again presented he refused to pay them and denied that the defendant was liable for the wood.    The contract for the wood was made by Lee; at the time it was made he did not disclose the fact, as he and the defendant afterwards claimed, that he was buying on his own individual account; nor did he disclose the fact that he was conducting the lime plant on his own account, afterwards claimed to be the fact under a contract made and entered into by and between Lee

and the defendant January 2, 1894, the material portion of which are as follows:

"Witnesseth, In consideration of the Empire Lime Company, party of the first part, furnishing tools, explosives, horse, carts and harness, John Lee, party of the second part, hereby agrees for the price and sum of eleven (11) cents per barrel for bulk lime and one and one-half (1 1-2) cents additional for nailing and loading barrel lime, and three (3) cents per barrel for making all barrels, if any, and as aforesaid the said John Lee, party of the second part, in consideration of said prices, agrees to do or cause to be done all burning and loading of lime, stripping, quarrying, breaking of rock and putting same in kilns, and all other work necessary to be done to produce a good and merchantable lime.

"It is further agreed that the said John Lee, party of the second part, shall feed and take good care of, at his expense, the horse furnished by said Empire Lime Company, party of the first part, and to use him for no other work than that pertaining to the interest of said Empire Lime Company.

"It is also further agreed by said John Lee, party of the second part, that there being three (3) distinct grades of lime rock in Elmore quarries, to be very particular to grade and assort the rock as per direction of the manager of the said Empire Lime Company, party of the first part, and at all times fill the kiln and keep same filled with the grade of rock the manager of said Empire Lime Company may order, a failure to comply with this section may create a forfeiture of this contract, the same to be determined by the manager of said Empire Lime Company.

"It is further agreed that said Empire Lime Company, party of the first part, shall receive and pay for at 5 1-2 cents per barrel for all lime rock quarried and ready for the kiln that the manager of said Empire Lime Company may have

ordered gotten ready for the kiln not burned on or before the expiration of this contract.

"It is further agreed that each and every barrel loaded in bulk shall weigh two hundred (200) pounds and that any shortage in weight of same shall be made good to the aforesaid Empire Lime Company, party of the first part, by the aforesaid John Lee, party of the second part.

"It is further agreed that the running and drawing kiln as to running full or partial capacity, shutting down or drawing out of kiln shall be subject to the order of the manager of said Empire Lime Company.

"It is further agreed that in consideration of the said John Lee, party of the second part, furnishing all wood or fuel necessary for the burning of the lime produced at Elmore at his expense, the said Empire Lime Company, party of the first part, shall pay to the said John Lee, party of the second part, the sum of seven cents (7) for each and every barrel of lime burned, received and sold by said John Lee in addition to amounts hereinbefore mentioned, said seven (7) cents per barrel to apply on indebtedness of said John Lee to said Empire Lime Company, for money received.

"It is further agreed that payments for all lime burned, loaded and sold, shall be made by said Empire Lime Company to said John Lee every second Monday or as soon after as practicable and out of all such payments the first money shall go to the men in the employ of said John Lee, the balance to go to the aforesaid John Lee. A failure at any time to pay the men in the employ of said John Lee the amount due them for labor performed in the production of lime, stripping, quarrying rocks, making barrels, etc., shall cause a forfeiture of this contract and in case of forfeiture or expiration of this contract an invoice shall at once be taken of all rock prepared or lime unsold and after paying the men their dues the balance, if any, shall be paid to the said John Lee.

"It is further agreed that in consideration of the said Empire Lime Company, party of the first part, having advanced to the said John Lee, party of the second part, money for the purpose of buying wood, cutting and hauling same to kiln, that at the forfeiture or expiration of this contract, should there be any part or portion of aforesaid money due the said Empire Lime Company, this contract shall become a lien on any personal property in possession of said John Lee and owned by him, such as horses, harness, wagons, tools or lumber, wood, etc., and the said Empire Lime Company by its manager, may take possession of such personal property and dispose of it as the law may direct. This section shall cover all property mentioned in and covered by contract of 1893.

"It is further agreed that the said John Lee shall remain at or near the works of the said Empire Lime Company, and be in readiness to answer all questions asked of him by letter by said Empire Lime Company's manager. It is further agreed that this contract shall expire on the 31st day of December, 1894."

This contract was recorded in the recorder's office of Lincoln county, but the evidence is that neither Suddarth nor Blair had any knowledge or information of its existence. It is under this contract that defendant seeks to escape liability for the value of the wood sued for. Lee was a stranger in the community of Elmore before he came there in 1890, and the evidence is that he brought no visible property with him, and that he is insolvent, and the plaintiff testified that he would not have sold the wood to Lee on his individual account. The contract is not a lease of the plant to Lee, for he did not get the full use and control of it by the terms of the contract; it is not a partnership agreement *inter partes* because there is not to be a division of the profits, and Lee agreed to bear all the expenses and all the losses. It is not a hiring of the plant in any sense because the supervision of

manufacturing lime at the plant is retained by defendant and the product was to be the sole property of the defendant. Reduced to its essence the contract is nothing more than the appointment by defendant of Lee its sub-manager of the plant; for his compensation he agreed to receive 11 cents per barrel for the lime produced and 1 1-2 cents per barrel for nailing and loading the same as compensation for his services and to pay certain expenses of production; in other words, his compensation was contingent and dependent on the fact whether what he was to receive should exceed the expenses he agreed to pay. As to parties dealing with him without knowledge of the contract he was under all the evidence the agent of the defendant; the defendant received the product of his labor and the result of the consumption of plaintiff's wood, and in equity and good conscience should under all the facts and circumstances developed by the evidence render compensation, unless relieved by some rule of law. No such rule is found applicable to the facts, and we affirm the judgment. All concur.