ALEXANDER, Appellant, v. WADE, Defendant; THE M. M. SECOR TRUNK COMPANY et al., Interpleaders, Respondents.

**St. Louis Court of Appeals, March 29, 1904.**

1. **PRACTICE: Parties: Interpleaders.** In an action by attachment where interpleas are filed for the fund attached, the plaintiff, after answering to the interpleas and going to trial, can not afterwards raise the question that the interpleaders have no capacity to sue as shown on the face of their interpleas.

2. **AGENCY: Ratification.** Where parties, about to purchase a stock of goods, stipulated that the seller should deposit in bank a sum of money for the payment of his mercantile creditors, which he did, without the knowledge or authority of such creditors, and such creditors afterwards, when the fund was attached, interpleaded for the same, they thereby ratified the agreement as made for their benefit and were entitled to the fund as against a general creditor attaching.

3. ————: ————: **Garnishment.** The interpleading creditors had control of the fund and it was therefore not deposited for the use of the seller and subject to garnishment in the attachment proceeding against him.

4. **PRACTICE: Incompetent Evidence: Error Not Prejudicial.** An error committed in the admission of incompetent evidence at the trial will not avail an appellant, where, under the com-

Alexander v. Wade.

petent evidence introduced without objection, the judgment is clearly for the right party.

Appeal from Montgomery Circuit Court.—*Hon. E. M. Hughes,* Judge.

AFFIRMED.

*P. H. Cullen* and *J. D. Barnett* for appellant.

(1)   The plaintiff having by his answer raised the point that there was an improper joinder of parties plaintiff and an improper joinder of causes of action in the interpleaders pleading, the point should have been sustained as the proof showed there was no possible reason why wholesale merchants residing in different cities, having different contracts and seeking to recover different amounts should be joined as common litigants in one action and in one count of the pleading in said action.   Hoagland v. Railroad, 39 Mo. 451; State v. Beasley, 57 Mo. App. 570; Richey v. Branson, 33 Mo. App. 418; Crenshow v. Ullman, 113 Mo. 633; Turner v. Lord, 72 Mo. 113.   (2) In an issue made upon an interplea in an attachment the only question for trial is the right of property and the only issue which can be submitted is whether the property attached was the property of. the interpleader or not.   Ency. Pl. and Pr., p. 841, and note; Rudskoff v. Rogers, 34 Mo. App. 131; Wills v. Thompson, 61 Mo. 632; Noland v. Deutch, 23 Mo. App. 1; Springfield Engine Co. v. Glozier, 55 Mo. App. 95; Williams v. Broden, 57 Mo. App. 317; Bech v. Wisdy, 63 Mo. App. 239.   (3)   Money placed by A in the hands of B to be paid to C does not become the property of C until he is advised of the deposit and consents to it. Ridge v. Olmsted, 73 Mo. 579; Nicholson v. Walker, 25 Mo. App. 374; Kerthly v. Pitman, 40 Mo. App. 603; Willer v. Cittle,. 66 Iowa 431.   (4)   An agreement between two or more persons that one shall pay money in his hands to a third person is not in the absence of notice

or acceptance of or assent to the arrangements by such third person irrevocable and hence does not create such a trust for or interest in such third person as to the fund as will prevent its attachment in a suit against the debtor. Kelly v. Babcock, 48 N. Y. 318; Kelly v. Movus, 40 N. Y. 432; Bank v. Grand Lodge, 98 U. S. 123; Crowell v. Hospital, 27 N. J. Eq. 654. (5) Parties to a contract made for the benefit of a third person may rescind without the permission of such third person if rescission is made before the third person has given his assent. 1 Beach on Modern Law of Contracts, secs. 201-2, and cases cited; Davis v. Calloway, 30 Ind. 112, 95 Am. Dec. 670; Gilhert v. Sanderson, 56 Iowa 349, 41 Am. 103; Jones v. Higgins, 80 Ky. 409; Trumble v. Strother, 25 Ohio St. 378. (6) Where the supposed assignor retains the subject under his control by delivering the order not to the assignee but to his own agent the transaction is not allowed to have the effect of an equitable assignment. Rodeck v. Gandell, 15 Eng. L. and Eq. 22; Kimball v. Donald, 20 Mo. 581; In re Cleary, 9 Wash. 605; Marvell v. Wooten, 16 Beav. 197; Gerrard v. Lauderdale, 2 Russ. & Myl. 451; Brockemeyer v. Bank, 40 Mo. 744; Geary v. Page, 9 Bosw. (N. Y.) 290. (7) To constitute a valid assignment there must be a perfected transaction between the parties, intending to vest in the party to be provided for a present right in the chose in action in question, even where the circumstances do not admit of its immediate exercise. In accordance with this doctrine, a mere executory agreement by a debtor to pay a certain debt out of a designated fund then due or to become due can not operate as an equitable assignment, since the alleged assignor would in that case retain control over the subject-matter. Christmas v. Russell, 14 Wall. (U. S.) 69; Dillon v. Raymond, 21 Wall. (U. S.) 439; Story v. Hull, 143 Ill. 506; 1 Ency. of Law (2 Ed.), p. 1068, and cases cited. (8) The bill of sale which is alleged to be an assignment fails to declare all the uses to which the fund is to

be applied but reserves to Wade the power to declare future uses and preferences and hence the alleged assignment is inoperative and void and fraudulent.  15 Ency. of Law (2 Ed.), p. 443; State v. Benoist, 37 Mo. 500; Sheldon v. Dodge, 4 Dem. (N. Y.) 217; Grover v. Woheman, 11 Wendy 203; Owen v. Arvis, 26 N. J. L. 22; Culon v. Mosley, 25 Tex. 374; Barnum v. Hempstead, 7 Paige (N. Y.) 568; Hyslop v. Clarke, 14 Johns. (N. Y.) 458.    (9)   The bill of sale was a conveyance to the use of Wade and is void under our statutes.   By the terms of the bill of sale Wade could draw the entire fund and all he had to do was to refuse to certify that the bills were correct.    The bank was powerless to pay the bills under the bill of sale.   It could pay them only upon the order of Wade, hence Wade retained full control of the fund and it was a conveyance by himself to his own use.   The bank was to pay back to Wade any surplus after Wade had refused to "O. K." bills.   Revised Statutes, sec. 3327; Halchen v. Winters, 71 Mo. 30; Moluska Mfg. Co. v. Steele, 36 Mo. App. 502; Biglow v. Struyer, 40 Mo. 195; Grocer Co. v. Miller, 53 Mo. App. 107; 15 Ency. of Law (2 Ed.), p. 431-2; 3 Ency. of Law (2 Ed.), p. 81 et seq.; 69 Mo. 442.

*A. W. Lafferty* for respondents.

(1)   Neither the contract by which the trust was created, nor the bill of sale which was a mere incident to it, reserves to Wade the power "to declare future uses and preferences," as claimed· by appellant under this point.   The purposes and uses for which the fund was to be applied was specific and certain, to-wit, the payment of the indebtedness on the goods of which Hays & Rodgers, parties to the contract, became purchasers, and had an interest in seeing paid. · A   provision that any balance should be returned to Wade would not make the provision fraudulent because that is a provision that the law would have added had it not been agreed upon.

Douglas v. Cissna, 17 Mo. App. 44. Nor did the provision that Wade should check over the various bills and approve them if correct. State v. Benoist, 37 Mo. 500. (2) Appellant contends that the fund was subject to garnishment by Alexander because the parties owning the indebtedness had not been notified of the making of the contract for their benefit and had not assented to it. The cases cited have no bearing on this case. The line of decisions of this State, beginning with Agnew v. McNulty, 7 Mo. 62, and ending with Whiteside v. Tall, 88 Mo. App. 168, simply hold that where a creditor directs his debtor to pay the debt, or a part of it, to a third person, and the debtor, upon no new consideration, agrees to do so, that until such third person is notified and gives his assent, that the authority to the debtor to pay such third person may be revoked, and the debt remains the property of the creditor giving such direction. Coleman v. Hatcher, 77 Ala. 217; Kelly v. Roberts, 40 N. Y. 432; Berly v. Taylor, 5 Hill 533; Williams v. Fitch, 18 N. Y. 546; Lawrence v. Fox, 20 N. Y. 268; Gridley v. Gridley, 24 N. Y. 130, and Lowry v. Stewart, 25 N. Y. 239; Canal Company v. Westchester County Bank, 4 Denio 97; Dingeldïen v. Railroad, 37 N. Y. 575; Rogers v. Gosnell, 58 Mo. 589; State ex rel. v. Gaslight Co., 102 Mo. 482; Ellis v. Harrison, 104 Mo. 276; State ex rel. v. Loomis, 88 Mo. App. 500; Crone v. Stinde, 156 Mo. 262.

STATEMENT.

Defendant Wade owned a general stock of merchandise, in the city of Montgomery, which he, in February 1903, offered to sell to Hays and Rogers of that city. He owed between seventeen and eighteen hundred dollars on his stock of merchandise to wholesale and jobbing houses from whom he had purchased the goods. Hays and Rodgers knew of this indebtedness and informed

Wade that they would not purchase the goods unless he would deposit in the Union Savings Bank of Montgomery City, Missouri, eighteen hundred dollars for the purpose of paying his commercial creditors. Wade agreed to make the deposit. The president of the bank was called in and agreed that the bank would accept the deposit and pay it out to Wade's commercial creditors, the bills to be approved by Wade before payment. Pursuant to this understanding, Wade executed, acknowledged and delivered the following bill of sale and contract:

"Know all men by these presents, that the undersigned Charles Wade, of Montgomery City, Montgomery county, Missouri, do sell, assign, transfer and set over unto the said George C. Hays and James K. Rodgers, the following described personal property, to-wit: One delivery wagon and one black horse, also all of his stock of goods now being in the Moore building in block 21 in Montgomery City, Montgomery county, Missouri, consisting of a general stock of merchandise, dry goods, notions, clothing, boots and shoes, rubber goods, groceries, tinware, hardware, glass and queensware, all furniture and fixtures used in and about said building in or connected with the store of said Wade, and all goods and fixtures of every kind used in and about the store of said Wade.

"Possession of said stock of goods is hereby turned over and delivered to said Hays and Rodgers, this seventh day of February, 1903.

"The said Hays and Rodgers hereby assume and accept as cash coupon book of duebills which are outstanding and issued by said Wade to an amount equal to the sum of one hundred dollars and no more.

"The said Wade agrees to pay off and discharge all bills he now owes for goods bought by him which he says now amounts to about $1,800 and the sum of 1,800 is to be placed in the hands of the Union Savings Bank to pay such bills. Such bills are to be approved by said

Wade and when so approved to be paid by the Union Savings Bank out of the said sum of eighteen hundred dollars so deposited with said Union Savings Bank by said Wade and no part of said $1,800 is to be paid back to said Wade by the said Union Savings Bank until all such bills owing by said Wade are paid.

"In witness whereof, I have hereunto signed my name this seventh day of February, 1903.

"CHARLES WADE."

Wade deposited seventeen hundred and fifty dollars in the bank for the benefit of his creditors and delivered the goods to Hays and Rodgers. The bill of sale and contract were duly recorded in the recorder's office of Montgomery county. Wade also deposited with the bank his books of account and the bills rendered by the merchants to whom he was indebted for goods. Within two days after making the deposit (February 7, 1903) Wade approved bills due to sundry of his creditors, aggregating $1,096.62, and the bank paid them. On February 9, 1903, plaintiff, who is not a commercial creditor of Wade, commenced a suit by attachment against Wade and on the same day had the bank garnished. On interrogatories exhibited to it, the bank denied any indebtedness to Wade and set out fully the circumstances under which the deposit of the seventeen hundred and fifty dollars was made and claimed the balance in its hands at the date of the service of process of garnishment ($635.08) was due to the following creditors of Wade for whose benefit it claimed the deposit was in part made, to-wit:

"M. M. Secor Trunk Co...............$ 28.70
C. A. Weimer........................ 16.50
J. M. Houston Grocery Co........... 86.20
Prairie Milling Co................. 11.40
Republic Oil Co.................... 8.48
Taylor-Newal Co.................... 121.50
I. Harris & Co..................... 66.00
H. Petring Grocery Co.............. 86.22

Meyer-Schmidt Grocery Co.......... ....    25.36
The Goddard Grocery Co.............  113.45
                                   ──── ──── ──── ────
    "Total ........... ......·........$563.81."
And alleged that it had no interest in the fund and asked
to be protected by the court in its disbursement.    The
creditors above named appeared and by leave of court
filed their interplea claiming the fund.    Other claimants
filed their interplea which, omitting caption, is as fol-
lows:

"Now comes the National Biscuit Company, a cor-
poration, the Bartlett Candy Company, a corporation,
and the Gunn Fruit Company, a corporation, and by
leave of court first had and obtained, file herewith their
claims against the defendant, Charles Wade, as cointer-
pleaders with the creditors who have heretofore filed
their interplea herein; and they hereby adopt the in-
terplea hereinafter filed by said creditors and join with
said creditors in said interplea."

Plaintiff answered the interplea, admitting that
Wade owed to each of them the amount set opposite their
respective names but denied that they or either of them
had any interest in the fund and alleged that the fund
belonged to Wade, was deposited to his individual ac-
count and therefore subject to garnishment.    The books
of the bank show that the seventeen hundred and fifty
dollars were deposited to the credit of the "Wade
fund," and in respect to it, the president of the bank
testified, on cross-examination, as follows:

"Q.    He deposited that money in your bank under
the entry of the Charles Wade Fund?    A.    Yes, sir, it
was left there that way.

"Q.    And you had it the same as any other deposit
there?    A.    No, sir.

"Q.    I mean by that, Doctor, you didn't keep
$1,750 in specie separated from your other funds?    A.
No, sir, it was entered up as the Charles Wade fund.

"Q.    But you didn't set aside any particular money

as representing that fund in dollars or bills, did you?
A. Just entered it up that way on our books.

"Q. And instead of drawing it out by check his method of drawing it out was to O.K. a certain bill and you paid it? A. Give us an order to pay it.

"Q. Give an order to pay it? A. Yes, sir.

"Q. Then it was deposited subject to his order? A. We have got orders and checks both.

"Q. I say it was deposited subject to his order? A. Yes, sir, in that way.

"Q. Whenever he presented an order to your bank? A. Whenever he presented an account; I wouldn't have honored a check under the circumstances.

"Q. You would have honored an order on a bill? A. Yes, sir.

"Q. Whether that bill was correct or whether he owed it you had nothing to do with it? A. No, sir.

"Q. He could have presented a bill the next day for $1,750 and told you it was correct and you would have paid it? A. No, sir; there was various bills, I understood.

"Q. Was there any specification as to who the bills were payable to? A. The names were mentioned, but I don't remember; I didn't pay much attention to them.

"Q. What names were mentioned? A. I couldn't tell; there were from eight to fifteen bills somewhere along there.

"Q. Did you make an entry of any name at all? A. I didn't until Mr. Lafferty came around and presented some accounts.

"Q. At the time I am talking about? A. No, sir.

"Q. At the time the fund was put in there you made an entry of no name at all? A. No, sir; I did not; he left the books there with the bills in them and would come around from time to time and get the bills out and tell us to pay them.

"Q. And what was to be done with the remainder

if there was any remainder after the bills were presented? A. We would of course give it back to him, certainly would.

"Q. You paid such bills as were presented up until the attachment? A. Yes, sir.

"Q. And after the attachment Mr. Lafferty presented an order to you signed by Charles Wade for the payment of these bills, on March 16th, didn't he? A. If he did I never noticed they were signed by Charles Wade.

"Q. You remember something being presented by Mr. Lafferty? A. I remember him bringing about this amount there, yes, sir; he gave me a copy of it and I filed it away there.

"Q. You remember that was after the attachment? A. Yes, sir."

The issues on the interplea were submitted to the court who found in favor of the interpleaders and rendered judgment accordingly. Plaintiff appealed.

BLAND, P. J. (after stating the facts).—1. Appellant alleged in his answer that the interpleaders were not necessary parties to the suit and insists here that they had no legal capacity to sue by interplea. If the interpleaders have no capacity to sue, the fact appeared on the face of their interplea and the objection should have been raised by special demurrer. Section 598, Code of Civil Procedure, R. S. 1899. By answering the plaintiff waived the objection. The Mechanics' Bank to use of Davis v. Gilpin, 105 Mo. 17; Gregory v. McCormick, 120 Mo. 657.

2. There are some minor and technical objections to the abstracts filed and we are asked to call for the original bill of exceptions. An examination of the abstracts shows that the appeal was taken in proper form and they contain enough of the evidence heard at the trial to fully possess us of the facts of the case, hence there is no necessity to resort to the bill of exceptions.

3. The arrangement under which the seventeen hundred and fifty dollars were deposited in the bank by Wade is out of the ordinary. The deposit was made on the demand of Hays and Rodgers, yet neither of them knew whom Wade owed, or what particular firms or individuals would be benefited by the deposit They undertook to act for Wade's commercial creditors as a class, that is, for the creditors to whom he was indebted for the goods they were purchasing from him and not for all his creditors nor for his creditors generally. Their primary motive was, perhaps, to avoid any imputation of fraud to themselves in having made the purchase of the goods with knowledge that Wade was largely indebted for their purchase price. Whatever may have been their motive, their action was not only lawful, but commendable, and the contract which they made with Wade in respect to the deposit was one which his creditors might lawfully have made with him and, therefore, might ratify after it was made, although Hays and Rodgers had no authority for the creditors to make it. As is said by Mechem on Agency, at section 112, "It is, therefore, the general rule that one may ratify the previous unauthorized doing by another in his behalf, of any act which he might then and could still lawfully do himself, and which he might then and could still lawfully delegate to such other to be done." In Suddarth v. Lime Company, 79 Mo. App. 592, we held that if A had no authority to contract for B, yet if B ascertained that he had so contracted and ratified the act, he was bound by the contract. In McCracken v. City of San Francisco, 16 Cal. 591, FIELD, Chief Justice, said: "To ratify is to give validity to the act of another. A ratification is equivalent to previous authority. It operates upon the act ratified in the same manner as though the authority had been originally given." See also Ruggles v. County of Washington, 3 Mo. 497; Summerville v. Railroad, 62 Mo. 391; Hartman v. Hornsby, 142 Mo. 368; Bank v. Hughlett, 84 Mo. App. 268.

The creditors, for whose benefit the deposit was made, being possessed with the power to make the contract themselves, in their own behalf, might thereafter ratify the contract made by Hays and Rodgers, although the latter were without authority to act as their agents and the ratification would operate upon the deposit as though Hays and Rodgers had authority as agents of the creditors to contract for the deposit for the purpose for which it was made. It is admitted that the interpleaders are commercial creditors of Wade and hence are creditors for whose benefit the deposit was made. By their interplea they have ratified the act of Hays and Rodgers and occupy the same situation in respect to the deposit as if it had been made for their benefit under a contract with their authorized agent or with themselves and being for their benefit, ratification will be presumed. Kingman & Co. v. Cornell-Tebbetts Co., 150 Mo. 282. The contention, that the names of the creditors were not furnished to the bank, is without merit. Their bills for the goods sold to Wade were in the vaults of the bank and were, therefore, accessible to it. Nor is there any merit in the contention that none of the bills could be paid to the bank until approved by Wade. The stipulation in the contract, that the bills should be approved by Wade before payment should be made, was for the protection of the creditors themselves as well as for the protection of Wade. But it does not follow that if Wade had wrongfully and arbitrarily refused to approve any bill that the creditor whose bill was thus refused would be denied or deprived of any right in the deposit, for he might establish the justice of his claim in any court of competent jurisdiction and through the court reach the fund for the payment of his debt.

4. Because it is admitted that Wade, by a system of false accounts and by entering into a conspiracy with others, could have withdrawn the entire deposit and appropriated it to his own use, it is contended that the

deposit was for the sole use of Wade, which contention is also without merit.    A path of rascality and chicanery is open to whoever is sufficiently depraved and foolish as to follow it, but there is no presumption that men will act dishonestly rather than honestly, in fact, the presumption is the other way, besides, the creditors were in a position to protect the fund from being diverted to any purpose other than the one for which it was deposited, if any attempt to so divert it had been made by Wade; and for the reason they could control it, the fund was not the subject of garnishment.

5.    Objections were made to the introduction of parol evidence in respect to the contents of the contract. This evidence was introduced before the contract itself was produced on the trial.    An examination of the evidence shows that it did not contradict the terms of the contract in any particular, and while it was inadmissible, after it was shown that there was a written contract in existence that could be produced and was afterwards produced, the error is non-prejudicial, as the evidence neither contradicted nor varied the terms of the contract.    But whether or not there was error committed in the admission of evidence, the error will not avail appellant, for the reason that under the competent evidence, to which no objections were interposed, the judgment is clearly for the right party and should not be reversed, notwithstanding incompetent evidence was admitted at the trial.    Southern, etc., Bank v. Slattery's Admr., 166 Mo. 620; Swanson v. City of Sedalia, 89 Mo. App. 121.

The judgment is affirmed.    *Reyburn* and *Goode,* *JJ.,* concur.