AMOS DAUGHERTY et al., Respondents and Appellants, v. ROBERT BURGESS & SON, Respondent; C. H. DIXON, Appellant.

Kansas City Court of Appeals, June 4, 1906.

1. PARTNERSHIP: Evidence: Other Partnerships. Evidence offered to show D was partner with B & S is reviewed and held insufficient; and evidence that D was partner of B is insufficient to show that he was partnership of B and S.

2. ———: ———: ———. To hold a partnership for the act of an alleged member, his membership must be shown and that he acted for the partnership as well as himself.

3. SALES: Guaranty: Action: Pleading. No recovery can be had where the conditions of the guaranty shown in evidence differ materially from the conditions pleaded.

4. ———: ———: Consummation: Agency: Contract. A syndicate undertook to purchase a stallion and at the signing of the papers, W refused to execute them. L was then authorized to complete the arrangement with the seller so as to protect the syndicate, and in doing so he agreed to different conditions of guaranty than had been before understood and so completed the transaction. *Held*, L's action bound the syndicate and became the contract between the parties.

5. ———: ———: ———: ———: Ratification. *Held*, further, that the syndicate by bringing suit on the contract as made by L, ratified his agency and the contract.

6. ———: ———: Action: Joint and Several. Where a syndicate, although between themselves subscribing different amounts, all sign notes amounting to the total sum; which notes are the joint and several contracts of the syndicate, they may maintain a joint action on the guaranty of the seller of the horse for purchase price of which the notes are given.    Cases distinguished.

7. ACTION: Parties: Misjoinder: Pleading. A misjoinder of parties appearing on the face of the petition should be taken advantage of by demurrer or it is waived.

8. APPELLATE PRACTICE: Instructions: Pleading: Evidence. Where the instructions cover the issues raised by the pleading and evidence, it is sufficient.

Appeal from Livingston Circuit Court. — *Hon. Joshua W. Alexander,* Judge.

AFFIRMED.

*C. C. Bigger* and *J. M. Davis & Sons* for appellants, Amos Daugherty et al.

(1)    It is error to sustain a demurrer to the evidence where there is any evidence, whether offered by plaintiff or defendant, which tends to support the allegations of the petition.    (2)    And plaintiffs are entitled to the benefit of all the facts before the court, as well as the most favorable inferences to be drawn therefrom. Pope v. Cable Co., 99 Mo. 400; St. Louis v. Railway, 114 Mo. 13.    (3)    Agency may be established by facts and circumstances, by the course of business of the alleged principal and agent, or by the declaration and acts of the principal.    Mosby v. Commission Co., 91 Mo. App. 500; Hull v. Jones, 69 Mo. 587; Mitchum v. Dunlap, 98 Mo. 418; Hoppe v. Saylor, 53 Mo. App. 4.

*Sheetz & Sons, A. U. House* and *Barnes & Magoon* for appellant, C. H. Dixon.

(1)    The petition states no cause of action.    Akins v. Hicks, 109 Mo. App. 95; Davis v. Hendricks, 59 Mo. App. 444; Shaky v. McDermott, 91 Mo. 647; Starrett v. Gault, 165 Ill. 99.    (2)    The contract sued on is a

several contract, and there could be no joint recovery. If any recovery can be had thereunder, each person must bring a several suit for the recovery of the price paid by him for his separate share in the horse. Akins v. Hicks, 109 Mo. App. 95; Davis v. Hendricks, 59 Mo. App. 444; Robbins v. Ayers, 10 Mo. 538; Robbins v. Ayers, 47 Am. Rep. 175; Starrett v. Gault, 165 Ill. 99; 1 Chitty, Pleadings (14 Am. Ed.), *10; Andrew's Stephens Pleadings (2 Ed.), pp. 47-49-50. (3) The minds of the parties failed to meet, several of them purchased their interest in the horse relying upon the written guaranty of Burgess & Son, and several of them relying upon the parol statements of Dixon; hence the minds of all the parties did not meet. Barton v. Hunter, 59 Mo. App. 610; Robinson v. Estes, 53 Mo. App. 581; Green v. Cole, 103 Mo. 70; Lungstron v. Ins. Co., 48 Mo. 201; Cangas v. Runnsey Mfg. Co., 37 Mo. App. 297; James v. Morrison, Etc., 69 Mo. App. 207; Armstrong v. School District, 28 Mo. App. 169; 7 A. & E. Ency. of Law (2 Ed.), 101; Missouri Ed. El. L. Co. v. Lewis, 86 Mo. App. 612; Northrup v. Ins. Co., 47 Mo. App. 435. (4) The court erred in admitting parol testimony of any guaranty or warranty made by defendant Dixon, a written guaranty made by Burgess & Son having been delivered and accepted with the horse. Gooch v. Conner, 8 Mo. 391; Rees v. Davis, 59 Mo. 184; State v. Henshaw, 98 Mo. 358; Pratt v. Morrow, 45 Mo. 404. (5) The court erred in excluding the evidence that the notes sued on were sent to the bank in Sumner to one of the plaintiffs with the view of selling them. (6) The court erred in giving the instructions for the plaintiffs and in refusing those asked for by the defendant, Dixon.

*C. C. Bigger* and *J. M. Davis & Sons* for respondents, Amos Daugherty et al.

(1) The contract, for the breach of which this action is brought, having been made by plaintiffs jointly, and there being no proof that there was any separate con-

tract or a separate warranty made to each purchaser of
the horse, a claim for damages growing out of the breach
of warranty or fraud belonged to the purchasers jointly,
and an action therefor must be prosecuted by all jointly,
and one of them could not separately sue therefor. Hop-
kins v. Lane, 87 N. Y. 501; Miller v. Crigler, 83 Mo. App.
403. (2) Plaintiffs being joint owners of the horse
would not have been entitled to severally sue for a
breach of warranty or a breach of agreement
as to the common property. Plaintiffs, being
united in interest, must join in the action.
R. S. 1899: sec. 544; Johnson v. Bank, 102 Mo. App.
399; Little v. Harrington, 71 Mo. 390. Seay v. Sanders,
88 Mo. App. 486. (3) The obligation being to plain-
tiffs jointly they could not separate the liability and
each bring an action. Dewey v. Corey, 60 Mo. 224;
Rainey v. Smizer, 28 Mo. 310; Thieman v. Goodnight,
17 Mo. App. 435. (4) But even though there is a mis-
joinder, the remedy of defendant was, first, if it ap-
peared upon the face of the petition, to have demurred
thereto; second, if it did not, to have raised the question
by his answer; and having failed to do either such mis-
joinder is waived. R. S. 1899, secs. 598, 602; William-
son v. Railway, — Mo. App.—90 S. W. 401.; Anderson v.
McPike, 41 Mo. App. 328; Donahue v. Bragg, 49 Mo.
App. 273; Crenshaw v. Ullman, 113 Mo. 633; Doyle v.
Transit Co., 103 Mo. App. 23. Such question cannot be
raised by a general demurrer to the evidence. Crenshaw
v. Ullman, 113 Mo. 633. And cannot be raised by the in-
structions. Pettingill v. Jones, 21 Mo. App. 210. (5)
In making the contract for which this suit is brought for
a violation, Lisle assumed to act for his co-owners of
the horse. The testimony shows, we think conclusively,
that he was authorized to so act for all of them; but
leaving out the question of his original authority, plain-
tiffs became the owners of the horse under that agree-
ment. All of the co-owners of the horse have joined in
this action and have thereby ratified all that Lisle did

in their behalf on that occassion.  The ratification is
equivalent to a previous authority and operates as
though the authority had been originally given.  Mc-
Cracken v. San Francisco, 16 Cal. 591; Alexander v.
Wade, 106 Mo. App. 151.  (6)  The written guaranty
made by Burgess & Son was never delivered to or ac-
cepted by plaintiffs.  The testimony showed and the
jury found that the sale of this horse was not closed until
the parol agreement upon which this action is based
was entered into by Lisle, representing his co-owners of
the horse, and Dixon; and the written guaranty made by
Burgess & Son never became a valid, binding and sub-
sisting contract, and was never accepted by plaintiffs;
besides this Burgess & Son never authorized its execu-
tion or delivery to plaintiffs.  (7)  No complaint is
made in defendant's brief or argument concerning any
instruction given by the court at the request of plain-
tiffs.  The court gave thirteen instructions on behalf of
defendant, and these instructions, with those given at
the request of plaintiffs, when taken and read together,
completely cover every issue in the case.  This is suffi-
cient.  Kennedy v. Transit Co., 103 Mo. App. 1; Cham-
bers v. Chester, 172 Mo. 463; Sidway v. Mo. L. & L. S.
Co., 163 Mo. 342; Crenshaw v. Summers, 56 Mo. 521;
Desberger v. Harrington, 28 Mo. App. 636.

BROADDUS, P. J.—This is a suit brought by the
appellants, Amos Daugherty et al. against Robert Bur-
gess and Charles Burgess, partners doing business under
the firm name of Robert Burgess and Son, and one C. H.
Dixon, to recover damages for the alleged breach of the
warranties in the sale of a stallion.  The cause was tried
at the May term, 1905, of the circuit court of Livingston
county, Missouri, before the court and a jury.  At the
close of all the evidence the court, over the objection
of plaintiffs, sustained a demurrer to the evidence, as to
Robert Burgess and Charles Burgess, but submitted
the issues to the jury as to defendant C. H. Dixon.  Un-
118 App.—36

der the peremptory instruction of the court the jury returned a verdict for the defendants Robert Burgess and Charles Burgess, but found for plaintiffs as against defendant C. H. Dixon. Plaintiffs appeal from the action of the court in sustaining said demurrer to the evidence, as to Robert Burgess and Charles Burgess, and rendering judgment for them, upon the verdict of the jury, returned in pursuance of said demurrer to the evidence. The defendant Dixon also appealed from the judgment rendered against him.

The issues presented by the pleadings may be briefly stated as follows:

Plaintiffs, who are farmers and stock raisers residing at or near the town of Sumner, Missouri, allege that about the 2nd day of October, 1902, defendant C. H. Dixon for himself and as agent for his co-defendants offered to sell to plaintiffs an interest in an imported French draft stallion, which he represented they then owned, at and for the price of $2200; that said Dixon for himself and as agent of his co-defendants stated and represented to plaintiffs that if they would purchase an interest in said horse to an amount as follows: Amos Daugherty, $100; G. I. Taylor, $200; W. A. Homan and J. S. Nelson, together, $100; Lewis Lisle, $200; Wm. Fulbright, $200; John West, $200; T. J. Thompson $200; Billie McKee, $200; David Barnhart, $200; Willie Eckles, $200; and D. S. Foster, $200, making a total of $2000, that one Williams, a farmer residing near said town of Sumner, would purchase the remaining interest of $200, that said Dixon for himself and as agent of his co-defendants further represented that said stallion was an imported French draft stallion, perfectly sound and in good health, well broke, and with no bad habits, and that they would so warrant him, and that they would further warrant that said stallion would get with foal sixty per cent of regular breeding mares which might be bred to him; that desiring to purchase said stallion for breeding purposes only, which fact was known to said

Dixon, and relying upon the representations as to the quality of said horse and that said Williams would pur- chase the remaining interest of $200 in said horse, they verbally agreed to purchase an interest in said horse as above stated; that it was agreed that plaintiffs, Dixon and said Williams would meet in said town of Sumner on October 2, 1902, when plaintiffs and said Williams would execute joint notes to said Dixon for the purchase price of said horse, and then said horse should be de- livered to plaintiffs and said Williams; that on October 2, 1902, they met, when plaintiffs executed jointly to said Dixon three notes — one for $733, due August 1, 1904, one note for $733, due August 1, 1905, and one note for $734, due August 1, 1906; said notes representing the purchase price of said horse; that after said notes had been so executed by plaintiffs they were turned over to said Dixon for the purpose of having them signed by said Williams; that thereupon said Williams refused to sign said notes or purchase an interest in said horse, and thereupon plaintiffs demanded the return of their said notes and refused to consummate the purchase of said horse; that said Dixon then proposed to plaintiffs that if they would go on and consummate the purchase of said horse without said Williams he would endorse on said notes a credit of $200, and would hold them and not transfer them before maturity, and that defendants would warrant said horse to be an imported French draft stallion, perfectly sound, well broke, with no bad habits, and would get with foal sixty per cent of regular breeding mares which might be bred to said stallion dur- ing the season of 1903, and that if said stallion failed to fulfill said warranty in all respects that defendants would receive said stallion back and surrender up to plaintiffs their said notes; that relying upon said verbal representations and warranties they purchased said horse; that soon after said horse was so purchased, and before the maturity of said notes, said Dixon assigned, transferred and delivered said notes, for value, to the

Chillicothe Savings Association without endorsing thereon a credit of $200; that plaintiffs before the institution of this suit paid said notes, together with all interest thereon; that during the season of 1903 a large number of regular breeding mares were bred to said horse in a prudent, careful manner, but said horse failed to get sixty per cent of them with foal, and failed to get any of said mares with foal; that said stallion wholly failed to comply with the warranty under which he was sold and was wholly worthless for breeding purposes or any other purpose, and claimed damages in the sum of $2,850.

The defendants Robert Burgess and Charles Burgess by their separate answer admit that they are partners, but deny that their co-defendant, Dixon, is a partner of theirs, or that they were in any way parties to the sale of said horse; deny that in the sale of said horse said Dixon was their agent. They set up that said stallion was sold to plaintiffs by Dixon under a written guaranty, signed by the defendants Roberts Burgess and Charles Burgess, and then allege that plaintiffs wholly failed to comply with said written guaranty on their part. Said answer also contains a general denial of all allegations of the petition not admitted to be true.

Plaintiffs by their reply denied all new matter contained in said answer.

Under the issues thus presented by the pleading the cause was tried.

We will first consider the appeal of the plaintiffs, Daugherty et al. The plaintiffs claim that Burgess & Son and Dixon were partners in the horse and that the latter in making the sale and the warranty was acting for both himself and Burgess & Son. This, the defendants Burgess & Son deny. Plaintiffs do not claim that Dixon was a general partner of Burgess & Son, but only such partner as to the particular horse in controversy. The plaintiffs, to maintain this issue, introduced evidence to the effect that the horse with other stallions was shipped direct from the stables of Burgess & Son,

at Winona, Illinois, to Chillicothe, Missouri; and that he was taken from the latter place to Sumner, Missouri, where he was sold by Dixon to the plaintiffs. It was shown by the evidence of the editor of the Breeders' Gazette, a stock paper published at Chicago, that Robert Burgess had inserted an advertisement in said Gazette, wherein he represented that Robert Burgess & Son had established a branch stable at Chillicothe for the sale of their stallions, and that defendant Dixon was their manager. The plaintiffs also introduced the delivery bond given in the case for the property seized under the attachment sued out in aid of the proceedings, wherein is used the following language: "Know all men by these presents, that we, Robert Burgess and C. H. Dixon, doing business under the name of Burgess & Dixon as principals," etc. Robert Burgess and Dixon each testified that Burgess & Son had no interest in the horse in question, that none of the horses sent to Chillicothe belonged to Burgess & Son; that they had been sold to Dixon before being sent to Chillicothe, and that the latter was not agent of the former in the sale of the horse.

Under this state of facts, there was no substantial proof that Burgess & Son and Dixon owned the horse in partnership. The advertisement does not in the least tend to show such ownership. The delivery bond, if it proves anything, goes only to show that Robert Burgess and Dixon were doing business as a partnership, which is not equivalent to a partnership of Burgess & Son and Dixon. And the publication in the Breeders' Gazette, although it might tend to show that Robert Burgess & Son were the owners of the animal and Dixon was their agent, it does not tend to show in the least a partnership between all the defendants. In order to hold Robert Burgess & Son liable, it was necessary to show that they and Dixon were partners in the horse and that Dixon in making the sale acted both for them and for himself. The action of the court in directing the jury to return a verdict for Burgess & Son was proper.

The appeal of the defendant Dixon rests mostly upon the question whether he sold the stallion to plaintiffs on the verbal warranty alleged in the petition, or on the conditions expressed in a printed form of guaranty of Burgess & Son. It was the custom of the latter when they sold a horse to give a certain printed guaranty to the purchaser as to his breeding qualities and pedigree, which was materially different from that in suit. One difference was that in the event that the horse did not comply with the guaranty of Burgess & Son they bound themselves to supply his place with another conforming in every particular with the description of the one sold. If, therefore, the stallion in question sold to plaintiffs was sold on the conditions contained in the form of the printed guaranty of Burgess & Son, plaintiffs were not entitled to recover, owing to the material difference of the two guaranties. Robert Burgess stated that he gave the guaranty mentioned to Dixon when his firm sold to him a horse, but Dixon had no authority to bind them on such guaranty to persons to whom he made sales.

The plaintiffs' evidence shows that they, with one Williams, agreed to subscribe individually certain amounts to be paid to Dixon for the purchase of the stallion at the price of $2,200; that before the purchase was consummated, Williams refused to take an interest in him; that thereupon it was concluded by Dixon and the plaintiffs that they would consummate the transaction without Williams upon the condition that the former would endorse a credit upon the three notes executed by plaintiffs for $2,200, in the sum of $200, the proposed amount of said Williams' subscription.

Dixon testified that while he was taking the subscription of the plaintiffs for their respective interests in the animal, he exhibited the printed guaranty of Burgess & Son, and that it was understood and agreed that the sale was made under the conditions therein expressed. In fact, his testimony is to the effect that it con-

tained the guaranties of Burgess and Dixon, not Burgess & Son and Dixon. He stated that the subscriptions were all made and the three notes signed, aggregating $2,200, and delivered to Nelson, one of the plaintiffs, who was then acting as his agent, with said printed guaranty; that when it was ascertained that Williams would not sign the notes and take an interest in the stallion, he took his note for $200, but afterwards tore it up; and that he did not agree to credit the amount thereof on said three notes. Nelson's testimony confirms to some extent that of Dixon, in so far as he says it was his understanding at the time the subscriptions were made and the notes executed, that the Burgess & Son guaranty went with the horse.

But the plaintiff Lisle testified that, after the plaintiffs had made their several subscriptions and had executed said three notes for $2,200, and after it was ascertained that Williams would not subscribe for a share, he was authorized by the other plaintiffs and subscribers to conclude the transaction with Dixon; that he thereupon went to Dixon and he agreed with him that plaintiffs would keep the horse, if Dixon would, among other things, give a credit on the notes for $200, the proposed amount of Williams' subscription; that Dixon said to him, "You fellows keep the horse," and that he would guarantee the horse would get sixty per cent of the colts; and the arrangement he so made was accepted by him for the plaintiffs, who approved it.

The fact that one, or even all the plaintiffs, when they subscribed their respective shares in the stallion, may have understood that they were to take him with the conditions contained in the printed form of the guaranty of Burgess & Son, was immaterial if before the transaction was finally concluded the agreement was that the plaintiffs were taking him on the verbal guaranty of Dixon. It was upon the state of facts given in evidence by the respective parties, a question for the jury. Their verdict in favor of the plaintiffs thereon is

amply supported by the evidence.    What has already
been said fully disposes of the question raised by appel-
lant Dixon that, under the evidence, it appears that the
minds of the contracting parties did not meet and that,
therefore, there was no contract of guaranty.    That is,
some of the plaintiffs contracted with the view to one
kind of guaranty and some of them with another and
different kind of guaranty.    But in addition to what has
been said of the evidence of plaintiff Lisle, the testimony
in a general way taken altogether shows that it was un-
derstood what kind of a guaranty went with the horse.

Had the transaction closed with the subscription of
the plaintiffs and the execution and delivery of the three
notes for the $2,200, the price of the stallion, the con-
tention of the defendant that the horse was sold under the
printed guaranty would be conclusive against the plain-
tiffs.    But there is much evidence that such was not the
case.    The failure of Williams to consummate the trans-
action left the plaintiffs in the position where they had
a right to protect themselves from the loss of the amount
of his subscription.    They were not bound by the terms
of the contract for subscriptions for that of Williams,
but they did bind themselves to pay it by the execution
and delivery of the three notes unless they made timely
objection because Williams had not signed them.    The
evidence is ample that when they found that Wil-
liams had not done so they demanded that the
defendant   Dixon   protect   them   against   liability
to that extent.    As it was the understanding that Wil-
liams should sign said notes, the transaction was not
concluded until he had done so unless the plaintiffs
waived it.    The plaintiffs' evidence, as stated, shows at
this time Dixon agreed to give credit to the amount of
Williams' subscription on said notes if plaintiffs would
keep the horse, and that he would guarantee him, as con-
tended.

And it might be further said that if there is any
doubt as to whether all the plaintiffs authorized the act

of Lisle in concluding the transaction and accepting the verbal guaranty of Dixon, they have by their action in bringing this suit ratified it. The rule is thus stated by Mechem on Agency, section 112: "It is, therefore, the general rule that one may ratify the previous unauthorized doing by another in his behalf, of any act which he might then and could still lawfully do himself, and which he might then and could still lawfully delegate to such other to be done." [See Alexander v. Wade, 106 Mo. App. 141.]

The defendant contends that the plaintiffs were not entitled to recover because each had a separate, and not a joint cause of action. It is true that each plaintiff, as among themselves, took a certain interest in the stallion, which was fixed by the amount of his subscription in proportion to the whole purchase price, to-wit; the sum of $2,200. But their indebtedness for the price of the horse was included in three promissory notes, the joint and several contract of all the plaintiffs. The defendants have cited us to the case of Davis & Rankin v. Hendrix, 59 Mo. App. 444. In that case, the plaintiffs sought to sue jointly against a number of persons who had subscribed specific amounts opposite their names for the promotion of a creamery. The court held that under the contract the defendants were only separately liable for the amount of their separate subscriptions. And a similar ruling is found in Davis v. Barker, 51 Fed. Rep. 148. But this case is essentially different in this, that all the plaintiffs have an interest in the subject-matter in controversy. In the cases cited, the obligation of each defendant was separate and the statement in the declarations that the defendants were indebted to plaintiffs in a joint obligation stated no cause of action whatever. But the guaranty in question was a joint obligation to all the plaintiffs, consequently their cause of action is joint and not several. [Dewey v. Carey, 60 Mo. 224; Rainey v. Smizer, 28 Mo. 310. The case of Akins v. Hicks, 109 Mo. App. 95, is not in point.]

The objection is not good for another reason. If there was a misjoinder, it appeared on the face of the petition and the defendants should have interposed a demurrer, but having failed to do so, they waive the error. [R. S. 1899, sec. 598.] This section has been so often construed that it is not necessary to refer to the cases on the question.

The defendant complains of the action of the court in refusing to give certain instructions. We have examined the record carefully and find that every issue raised by the pleading and evidence was fully covered by the instructions given, especially upon the side of defendant. Many other questions are raised by the parties, but, as we deem them immaterial, they will not be noticed specifically. The cause is affirmed. All concur.